**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

DAVID H. BEDORE,

                                     Plaintiff,                          8:22-cv-00473
                                                                    (AMN/CFH)

v.

ROGER LIND, New York State Trooper,
individually and/or as an agent, servant,
and/or employee of the State of New York,

                                       Defendant.

---

**APPEARANCES:**                                                 **OF COUNSEL:**

**CALABRESE LAW FIRM, PLLC**             **GENNARO D. CALABRESE, ESQ.**
33 Elk Street – Suite 103
Albany, New York 12207
Attorney for Plaintiff

**ATTORNEY GENERAL FOR THE**          **LAUREN R. EVERSLEY, ESQ.**
**STATE OF NEW YORK**                             **DAVID C. WHITE, ESQ.**
The Capitol                                           Assistant Attorneys General
Albany, NY 12224-0341
Attorneys for Defendant

**Hon. Anne M. Nardacci, United States District Judge:**

### MEMORANDUM-DECISION AND ORDER

### I.    INTRODUCTION

      On May 7, 2022, David H. Bedore ("Plaintiff") commenced this action against Roger Lind

("Defendant"), who, at all times relevant to this action, was a New York State Trooper, alleging

false arrest, false imprisonment, and malicious prosecution. *See* Dkt. No. 1 ("Complaint").[1]  On

June 21, 2022, Defendant filed an Answer to the Complaint.  Dkt. No. 5.  Presently before this

---

[1] Citations to court documents utilize the pagination generated by CM/ECF, the Court's electronic
filing system.

Court is Defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, or in the alternative, Defendant's motion for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Dkt. No. 6 (the "Motion").  Plaintiff filed an Opposition and a cross-motion for leave to amend the Complaint, Dkt. No. 8, and Defendant filed a Reply, Dkt. No. 10.  For the reasons stated herein, Defendant's Motion is granted and Plaintiff's request for leave to amend the Complaint is denied as moot.

## II.    BACKGROUND[2]

On June 26, 2019, Defendant arrested Plaintiff and charged him with one count of Felony Sexual Abuse in violation of New York State Penal Law § 130.65(3) in Piercefield Town Court.  Dkt. No. 6-2 at ¶¶ 14, 16.  Leading up to the arrest, Defendant was involved in an investigation of Plaintiff involving allegations of sexual abuse of a minor.  Dkt. No. 1 at ¶ 7; Dkt. No. 6-2 at ¶ 6.  The investigation began on or about June 21, 2019, when a woman ("CM"),[3] Plaintiff's romantic partner, told local police that Plaintiff had sexually abused her daughter ("MM"), who was born in 2012.  Dkt. No. 6-2 at ¶¶ 2-5.  Plaintiff lived with CM, MM, and CM's other daughter, who was also a minor.  Dkt. No. 1 at ¶ 10.  Plaintiff asserts that CM alleged that Plaintiff may have sexually abused MM between June 2016 and June 2018.  Dkt. No. 8-3 at ¶¶ 5-6 (citing Dkt. No. 5-2).

In connection with the investigation, Defendant conducted a forensic interview of MM on June 22, 2019.  Dkt. No. 6-2 at ¶ 7.  A caseworker from Child Protective Services ("CPS"), Aimee Richer, was present at that interview, in which MM disclosed that Plaintiff exposed himself to MM

---

[2] Unless otherwise indicated, the following facts have been asserted by the parties in their Statements of Material Facts with accurate record citations, and expressly admitted or not denied with a supporting record citation in response, *compare* Dkt. No. 6-2 (Defendant's Rule 56.1 Statement of Material Facts) with Dkt. No. 8-3 (Plaintiff's response).

[3] Pursuant to Federal Rule of Civil Procedure 5.2 and related case law, the minor and her mother are referenced by their initials to protect their privacy.

and put MM's hand on Plaintiff's penis.  *Id.* at ¶¶ 7a, 7b.  Plaintiff contends that the forensic interview of MM was not recorded.  Dkt. No. 8-3 at ¶ 7b.

On or about June 23, 2019, CM gave a sworn statement to New York State Trooper Fratello, in which CM stated, among other things, that MM disclosed that Plaintiff "would make [MM] touch his genitals every time" CM left for work.  Dkt. No. 6-2 at ¶¶ 8-9.  Trooper Fratello provided a copy of CM's sworn statement to Defendant before June 26, 2019.  *Id.* at ¶ 10.  After reviewing CM's sworn statement, Defendant, along with Investigator Paul Hill, interviewed Plaintiff on June 26, 2019, as Plaintiff was leaving work.  Dkt. No. 1 at ¶ 9; Dkt. No. 6-2 at ¶¶ 11-12; Dkt. No. 8-1 at 6.  Defendant informed Plaintiff of his Miranda rights and Plaintiff continued the interview.  Dkt. No. 6-2 at ¶ 12a.  Defendant avers that Plaintiff made statements consistent with the sexual abuse described by MM.  *Id.* at ¶ 12b. Plaintiff disputes Defendant's assertion and alleges that Plaintiff consistently denied that MM touched him in an inappropriate, sexual manner and that Defendant lied to and misled Plaintiff by telling him that MM had described and drawn Plaintiff's penis in particular detail.  Dkt. No. 8-3 at ¶¶ 21-22.  Plaintiff contends that he consequently reasoned aloud "that if—and only if—MM had been able to describe his penis in such detail, then she must have seen and/or touched his penis."  Dkt. No. 8-1 at 7.  Later that day, Plaintiff also wrote a Mirandized statement with a similar contention, stating, "If [MM] knows what my penis looks like flacid [sic] and erect, then what she says has to be true.  If she said she had my penis in her hand it must be true.  If she is saying that she can describe my penis hard and soft and the skin tags on my penis, it had to have happened.  I failed her, I failed them."  Dkt. No. 5-3 at 3.  Plaintiff also wrote in the Mirandized statement that "I began drinking quite a bit to deal with my diabetic neuropathy . . . I would be blackout drunk . . . Sometimes M[M] would sleep in my bed . . . There were times when I called MM into my room to snuggle . . . Sometimes I would

black out.  I drank Mr. Boston 100 proof vodka, straight out of the bottle . . . . Today, when you guys came here, I still don't remember my penis ever being in M[M]'s hand or myself touching her inappropriately . . . I know M[M] is a good girl.  I know she is not a liar." *Id.* at 2-3.

Defendant alleges that he subsequently placed Plaintiff under arrest based on the forensic interview with MM on June 22, 2019, CM's sworn statement on June 23, 2019, and Plaintiff's oral and written statements on June 26, 2019 (together, the "June 26 Confession").  Dkt. No. 6-2 at ¶ 15.  On October 31, 2019, the St. Lawrence County District Attorney's Office presented the case to a grand jury.  Dkt. No. 8-1 at 7.  The grand jury returned an indictment on four counts of Sexual Abuse in the First Degree on November 21, 2019.  Dkt. No. 1 at ¶ 35; Dkt. No. 8-12.  Plaintiff contends that Defendant lied in his testimony before the grand jury when he stated that Plaintiff had admitted to making MM touch his penis.  Dkt. No. 8-1 at 7; Dkt. No. 8-3 at ¶ 27.  Plaintiff also contends that Defendant omitted from his grand jury testimony the false information Defendant used to induce Plaintiff's alleged false confession; namely, that MM described his penis and drew a picture of it with particular detail.  Dkt. No. 8-1 at 7; Dkt. No. 8-3 at ¶ 30.

On March 9, 2021, the Honorable Richard B. Meyer of the St. Lawrence County Court issued a decision and order suppressing the June 26 Confession because he found that Defendant, among other things, used egregious "deception and lies" and improperly made false promises to the effect that Plaintiff's "will and independent judgment were overwhelmed and numbed such that he came to believe that the incident must have happened."  Dkt. No. 8-8 at 13.  As a result, the Court deemed Plaintiff's June 26 Confession to be "involuntary within the ambit of CPL § 60.45(2)."[4]  *Id.*  Following the suppression order, Plaintiff's trial counsel moved to dismiss the

---

[4] New York Criminal Procedure Law § 60.45(2) states that "[a] confession, admission or other statement is "involuntarily made" by a defendant when it is obtained from him: (a) By any person by the use or threatened use of physical force upon the defendant or another person, or by means

indictment. Dkt. No. 8-1 at 8 (citing Dkt. No. 8-8; Dkt. No. 8-9 at 5-6). The District Attorney's Office subsequently filed a letter requesting dismissal and the Court dismissed the indictment in favor of the Plaintiff. *Id.* (citing Dkt. No. 8-9 at 6).[5]

From these events, Plaintiff alleges that Defendant, in his individual and official capacities, acted under the color of state law with actual malice and without probable cause to deprive Plaintiff of his federal civil rights through false arrest, false imprisonment, and malicious prosecution. *See* Dkt. No. 1. As a result, Plaintiff claims that he suffered damage in the form of severe emotional and psychological distress and harm. *Id.* at ¶¶ 48, 54, 60.

## III.   STANDARD OF REVIEW

Summary judgment is properly granted only if, upon reviewing the evidence in the light most favorable to the nonmovant, there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Richardson v. Selsky*, 5 F.3d 616, 621 (2d Cir. 1993). A court first determines "whether the evidence presents a sufficient disagreement to require submission to a [factfinder] or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*

---

of any other improper conduct or undue pressure which impaired the defendant's physical or mental condition to the extent of undermining his ability to make a choice whether or not to make a statement; or (b) By a public servant engaged in law enforcement activity or by a person then acting under his direction or in cooperation with him: (i) by means of any promise or statement of fact, which promise or statement creates a substantial risk that the defendant might falsely incriminate himself; or (ii) in violation of such rights as the defendant may derive from the constitution of this state or of the United States."

[5] The court dismissed the indictment after suppressing the June 26 Confession and finding that MM was not competent to testify under oath before the grand jury. Dkt. No. 8-9 at 4-6. The Court found that MM was not competent because MM was younger than nine years old and the Assistant District Attorney had not sufficiently established that MM knew that it was necessary for a witness to tell the truth and that a witness could be punished if he or she did not. *Id.* Additionally, in asking for dismissal, the Assistant District Attorney noted that "the victim could no longer recall the events with sufficient detail." Dkt. No. 8-9 at 6. Without the confession or MM's testimony, the Court found the evidence legally insufficient. *Id.* at 5-6.

*v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986). "When analyzing a summary judgment motion, the court 'cannot try issues of fact; it can only determine whether there are issues to be tried.'" *Galeotti v. Cianbro Corp.*, No. 5:12-cv-00900 (MAD/TWD), 2013 WL 3207312, at *4 (N.D.N.Y. June 24, 2013) (quoting *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36-37 (2d Cir. 1994)).

Defendant, in seeking summary judgment, "bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish [his] right to judgment as a matter of law." *Rodriguez v. City of New York*, 72 F.3d 1051, 1060-61 (2d Cir. 1995) (citation omitted). To determine whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *accord Gibbs-Alfano v. Burton*, 281 F.3d 12, 18 (2d Cir. 2002). A "material" fact is one that would "affect the outcome of the suit under the governing law," and a dispute about a genuine issue of material fact occurs if the evidence is such that "a reasonable [factfinder] could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *accord R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 57 (2d Cir. 1997). The Court should "grant summary judgment where the nonmovant's evidence is merely colorable, conclusory, speculative or not significantly probative." *Schwimmer v. Kaladjian*, 988 F. Supp. 631, 638 (S.D.N.Y. 1997) (citing, *inter alia*, *Anderson*, 477 U.S. at 249-50).

## IV.   DISCUSSION

Plaintiff alleges claims pursuant to 42 U.S.C. § 1983 for: (i) false arrest, (ii) false imprisonment, and (iii) malicious prosecution.[6]  *See* Dkt. No. 1.  Defendant moves for summary

---

[6] Although Plaintiff purports in paragraph 1 of the Complaint to bring claims under "42 U.S.C. sections 1982, 1983, 1985, and 1988, and the Constitutions (sic), Laws and Statutes of the United

judgment on all of these claims, arguing that summary judgment is appropriate because there was probable cause to arrest and prosecute Plaintiff. *See* Dkt. No. 6-1 at 5-8. In the alternative, Defendant argues that (i) the Court should dismiss Plaintiff's Complaint for failure to state a claim, and (ii) he is entitled to qualified immunity. *Id.* at 8-12.

### A.  Existence of Probable Cause

"A [S]ection 1983 claim for false arrest is substantially the same as a claim for false arrest under New York law." *Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007) (citation omitted). "Under New York law, false arrest and false imprisonment are one and the same." *Morales v. United States*, 18-cv-4247 (CBA) (RER), 2023 WL 2129580, at *4 (E.D.N.Y. Feb. 17, 2023) (citing *Posr v. Doherty*, 944 F.2d 91, 96 (2d Cir. 1991)). To establish a cause of action for false arrest/false imprisonment, a plaintiff must demonstrate that: (1) the defendant intended to confine plaintiff; (2) plaintiff was conscious of the confinement; (3) plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged. *Id.* (citation omitted).

"To prevail on a Section 1983 claim for malicious prosecution, 'a plaintiff must show a violation of his rights under the Fourth Amendment . . . and must establish the elements of a malicious prosecution claim under state law.'" *Butler v. Hesch*, 286 F. Supp. 3d 337, 355 (N.D.N.Y. Feb. 15, 2018) (quoting *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010) (citations omitted)). "The elements of a malicious prosecution claim under § 1983 are substantially the same as the elements under New York law." *Kelly v. Guzy*, No. 8:20-cv-721 (GTS/CFH), 2021 WL 5232749, at *4 (N.D.N.Y. Nov. 10, 2021), *report-recommendation adopted*, 2022 WL 160305 (N.D.N.Y. Jan. 18, 2022) (internal quotations and citation omitted).

---

States and the State of New York," Plaintiff appears to only have asserted claims under 42 U.S.C. § 1983 ("Section 1983"). *See generally* Dkt. No. 1.

To state a malicious prosecution claim under New York law, the plaintiff must allege facts plausibly showing: (1) the initiation of a criminal proceeding; (2) its termination favorably to plaintiff; (3) lack of probable cause; and (4) malice.  *See Manganiello*, 612 F.3d at 161 (citations omitted).

The parties principally dispute whether Plaintiff's arrest and subsequent prosecution was based on probable cause.  For the false arrest/false imprisonment claim, this implicates the fourth element, because an arrest is privileged when it is based on probable cause.  *See Jenkins*, 478 F.3d at 84.  For the malicious prosecution claim, it implicates the third element, which requires a plaintiff to show that the defendant lacked probable cause.  *See Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 417 (2d Cir. 1999).

Probable cause is a complete defense to constitutional claims of malicious prosecution and false arrest.  *See Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014).  Probable cause to arrest exists when an officer has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime."  *Dickerson v. Napolitano*, 604 F.3d 732, 751 (2d Cir. 2010) (citation omitted).  As for malicious prosecution, probable cause under New York law "is the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of."  *Pandolfo v. U.A. Cable Sys. of Watertown*, 171 A.D.2d 1013 (4th Dep't. 1991) (citations omitted).  "The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers . . .."  *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (citation omitted).

Here, the Court need not address the question of whether actual probable caused existed

because Defendant is entitled to qualified immunity on the basis that arguable probable cause existed at the time of Plaintiff's arrest and subsequent prosecution. *See Harig v. City of Buffalo*, No. 22-30-cv, 2023 WL 3579367, at *5 n. 9 (2d Cir. May 22, 2023) (summary order) ("Because there was arguable probable cause to arrest and prosecute [Plaintiff], we need not reach whether actual probable cause existed to do the same.") (collecting cases).

### B.  Qualified Immunity

Qualified immunity shields government officials from liability for money damages for violation of a right under federal law if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  It allows government officials to make reasonable judgments and is said to protect "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

"Under federal law, a police officer is entitled to qualified immunity where '(1) his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was 'objectively reasonable' for him to believe that his actions were lawful at the time of the challenged act.'" *Jenkins*, 478 F.3d at 87 (quoting *Cerrone v. Brown*, 246 F.3d 194, 199 (2d Cir. 2001)) (other citations omitted).

"The right not to be arrested or prosecuted without probable cause has, of course, long been a clearly established constitutional right." *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991).  "Therefore, [the Court focuses] on whether the officers' probable cause determinations were objectively reasonable." *Doe v. Pisani*, No. 21-2847, 2023 WL 4240987, at *1 (2d Cir. June 29, 2023) (summary order) (citing *Jenkins*, 478 F.3d at 87).  "An officer's determination is objectively reasonable if there was *'arguable' probable cause* . . . that is, if 'officers of reasonable

competence could disagree on whether the probable cause test was met.'" *Jenkins*, 478 F. 3d at 87 (quoting *Lennon v. Miller,* 66 F.3d 416, 423-24 (2d Cir. 1995)) (emphasis added). "Put another way, an . . . officer will find protection under the defense of qualified immunity unless 'no reasonably competent officer' could have concluded, based on the facts known at the time . . . that probable cause existed." *Figueroa v. Mazza*, 825 F.3d 89, 100 (2d Cir. 2016). "Arguable probable cause to charge exists where, accounting for any new information learned subsequent to an arrest, 'it was not manifestly unreasonable for the defendant officer to charge the plaintiff' with the crime in question." *Jean v. Montina*, 412 F. App'x 352, 354 (2d Cir. 2011) (summary order) (alterations and citation omitted).

Defendant argues that he is entitled to qualified immunity because the evidence that he relied upon exceeded the low threshold of arguable probable cause. Dkt. No. 6-1 at 11-12. Defendant principally argues that he relied on: (i) the forensic interview that he conducted of MM, in which she "disclosed sexual abuse by Plaintiff;" (ii) the sworn statement of CM, MM's mother, which contained allegations establishing the elements of Sexual Abuse in the First Degree; and (iii) the June 26 Confession, which included Plaintiff's own statement that MM "is not a liar." *Id.* at 4, 11. In Opposition, Plaintiff does not specifically address Defendant's argument that he had arguable probable cause to arrest and prosecute Plaintiff. *See generally,* Dkt. No. 8-1. Instead, Plaintiff offers a host of conclusory assertions and arguments related to actual probable cause. *See, e.g., id.* at 16-18.

The Court agrees with Defendant that he possessed arguable probable cause because "officers of reasonable competence could disagree on whether the probable cause test was met." *See Zalaski v. City of Hartford*, 723 F.3d 382, 390 (2d Cir. 2013). Here, Defendant conducted a forensic interview of MM, the victim, that was attended by a CPS worker, in which she disclosed

that she was sexually abused by Plaintiff.  Dkt. No. 6-2 at ¶¶ 7, 7b.  It is well-established that "a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness, unless the circumstances raise doubt as to the person's veracity."  *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006).  At the time of the forensic interview, MM was approximately 7 years old and alleged that she was sexually abused by Plaintiff from the age of 4 to 6.  Dkt. No. 6-2 at ¶ 4; Dkt. No. 8-3 at ¶¶ 5-6 (citing Dkt. No. 5-2 at 1).  In addition to MM's forensic interview, CM, MM's mother, provided a sworn statement establishing that MM had told her that she was sexually abused by Plaintiff.  *See* Dkt. No. 6-2 at ¶¶ 8, 9.[7]

Some courts have found that a very young child's age can call into question the veracity of the child's allegations of sexual abuse.  *See, e.g., Wesley v. Campbell*, 779 F.3d 421, 430 (6th Cir. 2015) ("[I]t appears that no federal court of appeals has ever found probable cause based on a child's allegations absent some other evidence to corroborate the child's story."); *Stoot v. City of Everett*, 582 F.3d 910, 920 (9th Cir. 2009) ("In cases involving very young child victims, the courts have repeatedly emphasized the need for some evidence in addition to the statements of the victim to corroborate the allegations and establish probable cause"); *United States v. Shaw*, 464 F.3d 615,

---

[7] Defendant also conducted an interview with Plaintiff in which Plaintiff made oral and written statements (*i.e.,* the June 26 Confession).  Dkt. No. 6-2 at ¶¶ 12a, 12b.  Although the June 26 Confession was suppressed by the state court following a grand jury indictment, *see* Dkt. No. 8-8, Defendant contends that the June 26 Confession corroborated MM's statements and served as a basis for his finding of the existence of probable cause at the time of Plaintiff's arrest.  Dkt. No. 6-1 at 4.  Federal courts "normally give great deference to the factual findings of the state court . . . [but] the ultimate issue of voluntariness [of a confession] is a legal question requiring independent federal determination."  *Arizona v. Fulminante*, 499 U.S. 279, 287 (1991) (internal quotations, citations, and alterations omitted).  For purposes of resolving the Motion, the Court need not do an independent analysis of whether Plaintiff's confession was voluntary because the Court finds that even without the June 26 Confession, Defendant possessed arguable probable cause to arrest and prosecute Plaintiff.

624 (6th Cir. 2006) (holding that a young child's uncorroborated hearsay allegations were too unreliable to form the basis for probable cause); *Gonzalez v. Delaware County*, 3:17-cv-373 (LEK/DEP), 2017 WL 600823, at *6 (N.D.N.Y. Dec. 4, 2017) ("Since I.T. was six years old on December 17, 2015, and she allegedly reported incidents of abuse that occurred eight to twenty-four months earlier, the veracity of her statements is at issue."); *Simuro v. Shedd*, 176 F. Supp. 3d 358, 378 (D. Vt. 2016) (stating that "police officers must exercise extreme caution in crediting the statements of young children"). However, the Second Circuit has not ruled on this question and thus it is not the clearly established law of this Circuit that a very young child's age must call into question the veracity of the child's allegations of sexual abuse. Moreover, the veracity of MM's statements that she was sexually abused by Plaintiff during the forensic interview is "irrelevant to a determination of whether [Defendant] had arguable probable cause," rather, the question is whether Defendant "could have reasonably relied on [MM's] statements." *Escarela v. Lunn*, 361 F.3d 737, 745 (2d Cir. 2004). The Court believes it was reasonable for Defendant to rely on MM's statements under the circumstances present here, including the fact that, other than the issue of her age, there was no reason to question MM's veracity, and MM's mother CM made a corroborating statement based on MM's separate statements to her.

Based on the totality of the information known by Defendant at the time, the Court cannot conclude that no reasonable police officer could think that probable cause existed. *See Gonzalez v. Hahl*, 850 F. App'x. 127 (2d Cir. 2021) (summary order) (affirming district court's granting of summary judgment finding on the ground that arguable probable cause existed where a 6-year-old victim alleged that she was sexually abused and the defendant "repeatedly denied having sexual

or improper intent"). Accordingly, Defendant's motion for summary judgment is granted on the ground that he is entitled to qualified immunity.[8]

## V.    CONCLUSION

Accordingly, the Court hereby

**ORDERS** that the Defendant's motion for summary judgment, Dkt. No. 6, is **GRANTED**; and the Court further

**ORDERS** that the Plaintiff's request for leave to amend the Complaint is **DENIED as moot**; and the Court further

**ORDERS** that the Clerk shall enter judgment in Defendants favor and close this case; and the Court further

**ORDERS** that the Clerk serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: August 31, 2023
       Albany, New York

Anne M. Nardacci
U.S. District Judge

---

[8] Because Defendant is entitled to qualified immunity, the Court will not address Defendant's alternative ground for dismissal (*i.e.,* his Rule 12(b)(6) motion). Moreover, Plaintiff's motion to amend the Complaint is denied as moot.